UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN TOMPKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00426-JRS-MJD |
| | ) | |
| SEVIER Superintendent, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORUPUS**

After a mistrial, petitioner John Tompkins was retried, convicted of burglary, and found to be a habitual offender in an Indiana state court in 2011. Tompkins now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raises five grounds for relief: 1) his retrial violated the prohibition against double jeopardy, 2) the wrongful admission of certain testimony at trial, 3) prosecutorial misconduct in closing argument, 4) ineffective assistance of counsel in failing to object during closing argument, and 5) ineffective assistance of counsel when impeaching witnesses.

As discussed further in this Order, the Indiana Court of Appeals did not unreasonably apply federal law when it determined that Tompkins' second trial did not violate double jeopardy. Tompkins' remaining claims are procedurally defaulted and he has not overcome that default. Therefore, his petition for a writ of habeas corpus is **denied** and a certificate of appealability will not issue.

**I.**
**Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing

evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> On December 27, 2010, Daphne Rutledge and Brittany Henderson went to Mary Orr's house to pick her up, and Tompkins, who was dating Orr, was at the house at the time. After picking up Orr, the three women went to Rutledge's home. Rutledge lived with her mother Dorothy and her nine-year-old daughter. At some point, Rutledge, Henderson, and Orr left to run errands and stopped at a gas station, where they saw Tompkins, who was wearing an all gray jogging or sweat suit, white t-shirt, and white tennis shoes and had braids in his hair. Instead of leaving the gas station with Rutledge and Henderson as planned, Orr left with Tompkins.
>
> Later that night, Rutledge and Henderson went to a bar in Greenwood, Indiana, to play poker. While at the bar, Orr called Rutledge more than ten times. After playing poker, Rutledge and Henderson returned to Rutledge's home. At approximately 2:00 a.m., Tompkins called Rutledge using Orr's phone and began to argue with her, became "rude, loud, argumentative, and disrespectful," and stated "Oh, you think you're going to get my girlfriend. B, you can come get some, too. You can Google me ...." Transcript at 213–214. The argument ended when Rutledge's phone died. Rutledge, Henderson, and Rutledge's daughter all fell asleep on a bed in Rutledge's bedroom.
>
> At some point later during the night, Dorothy woke up to a loud beating coming from the entrance door to Rutledge's apartment, she then heard a "real loud kick of like a real loud bang," jumped up, went into the hallway, and observed Tompkins climbing the stairs with a knife in his hand. *Id.* at 255. Dorothy yelled at Tompkins, but he ignored her and went inside Rutledge's room. Dorothy followed Tompkins into the room and observed that Tompkins was over Rutledge and hitting her.
>
> Rutledge woke up as Tompkins was on top of her and stabbing her. Rutledge recognized Tompkins based on the gray jogging suit, shoes, and braids. Henderson was awakened by Tompkins when he jumped, in "an aggressive move like a pounce," onto the bed, and Henderson pulled Rutledge's daughter off of the bed with her. *Id.* at 285. Henderson observed Tompkins run out of the room. Henderson and Dorothy called 911.
>
> The police officer responding to the scene observed fresh signs of forced entry. An ambulance transported Rutledge to the hospital where it was determined that she had been stabbed five times, suffered nerve damage in her right hand, and one of her kidneys had been stabbed. While in the hospital, Orr called Rutledge and then Tompkins spoke to Rutledge on the phone. Tompkins stated that he did not stab Rutledge and offered her "money to let the police know that he did not do it." *Id.* at 225. Rutledge told Tompkins no and that he "could burn in hell." *Id.*

> Later, Rutledge and Henderson were both shown a photo array and both identified Tompkins as the perpetrator.

*Tompkins v. State*, 977 N.E.2d 31, 2012 WL 4846530, *1 (Ind. Ct. App. October 11, 2012) (in the

record at dkt. 6-7) (*Tompkins I*).

Tompkins was charged with burglary as a Class A felony, aggravated battery as a Class

B felony, and battery as a Class D felony. The State also alleged that he was a habitual offender.

*Id*. at *2.

> Prior to the start of Tompkins's first trial on October 17, 2011, Tompkins verbally moved to exclude "Mary Orr, any testimony as to any statements she might [ ] have made." Transcript at 25. The State noted that at least one witness heard a voice that she recognized was Orr's voice and that would be admissible, and Tompkins agreed. The court granted Tompkins's motion to exclude the content of Orr's statements but not as to testimony from a witness that she heard Orr's voice.

> During the first trial, the State asked Henderson if Tompkins was in the parking lot of the gas station, and Henderson responded: "I don't know if he was standing in the parking lot. I mean, he wasn't—I don't even think he expected us to be there. She was, like, panicked when she seen him." *Id.* at 105. The State asked "And that's Mary?" *Id.* Henderson responded: "Yes, Mary Orr. She had just went to the gas station and bought a bunch of stuff, drinks, food and everything, and left it in the car because she didn't want him to know that she had it." *Id.* Tompkins objected and stated that Henderson "started to talk about what Mary had said." *Id.* at 106. The court noted that Henderson was answering a question that was not asked and was volunteering information, and the court confirmed with the State that it had informed its witnesses of the court's rulings.

*Id*. When Rutledge, during direct examination, began to testify about the phone call she received

from Orr while playing poker, the following exchange occurred:

> Q    Did anybody call you while you were at the bar?
>
> A    Yes.
>
> Q    Who called you?
>
> A    [Orr] had called me and told me she was getting beat.

Trial Transcript, dkt. 7-2 at 175-76.[1]

Tompkins objected and moved for a mistrial. The jury was sent out of the courtroom, and the trial court then listened to the recording of the testimony to confirm what was said. After doing so, Rutledge was asked by Tompkins' counsel if the prosecutor told her not to repeat statements made by others. Rutledge responded: "Yeah, he told me don't say what another person has said outside. But she said it directly to me. That's where it came to, to me." *Id*. at 178–79. Defense counsel then asked for a mistrial and discharge. *Id*. at 180.

The trial judge stated: "I do not believe that it was the State's intention to have that witness say that. That question did not call for it. [Rutledge] went beyond what the answer would've called for." *Id*. at 188. Tomkins' trial counsel then stated that he "totally" trusted the prosecutor based on his prior dealings with him but argued that the prosecutor had a duty to specifically instruct Rutledge not to testify about any statements from Mary Orr. *Id*. at 189. The trial court ultimately granted a mistrial.

Tompkins was retried and found guilty of burglary. He was also found to be a habitual offender. On direct appeal, he raised three claims of error: the prohibition against double jeopardy was violated by the retrial after the first trial resulted in a mistrial; the trial court erred under Indiana's Rules of Evidence by allowing Detective Smith to testify about his experience with taking statements from victims; and the State committed prosecutorial misconduct with its rebuttal argument regarding motive. Dkt. 6-4.

The Indiana Court of Appeals affirmed Tompkins' conviction. First, the court concluded that because "the prosecutor did not intend to force Tompkins to move for a mistrial …

---

[1] The Court cites the pdf page number as the transcript appears in the record. The actual page number on the transcript may differ slightly in some cases.

Tompkins's second trial did not violate the constitutional or statutory proscriptions against double jeopardy." *Tompkins I*, 2012 WL 4846530 at *5. The court next found that both the claim relating to Detective Smith's testimony and the prosecutorial-misconduct claim were waived for failing to properly preserve them. *Id*. at *5-7. Tompkins filed a petition to transfer to the Indiana Supreme Court raising only the double-jeopardy claim. Dkt. 6-8. The Indiana Supreme Court denied Tompkins' petition to transfer. Dkt. 6-2.

Tompkins next filed a petition for post-conviction relief in state court alleging the following instances of ineffective assistance of counsel: failing to properly preserve his prosecutorial-misconduct claim, failing to object to two other portions of the State's closing arguments, cumulative prejudice from the alleged misconduct in the State's closing argument, failure to "effectively impeach the witnesses' credibility," and making the mistrial argument in the first trial "in such a way as to preclude  discharge." Dkt. 6-11. The post-conviction court denied Tompkins' petition. Dkt. 6-12.

On appeal from this denial, Tompkins raised only one issue: whether trial counsel in his first trial ineffectively argued for a mistrial in a way that allowed for retrial. Dkt. 6-13. The Court of Appeals unanimously affirmed. *Tompkins v. State*, 135 N.E.3d 157, 2019 WL 4924823 (Ind. Ct. App. 2019) (in the record at dkt. 6-16) (*Tompkins II*). Tompkins petitioned for transfer to the Indiana Supreme Court, and the Supreme Court unanimously denied his petition. Dkt. 6-17; dkt. 6-19.

Tompkins then filed the instant petition for a writ of habeas corpus.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a).

5

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply

reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis*, 390 F.3d at 1025-26.

Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). Procedural default can also occur if the state court rejects a federal claim based on a state procedural rule "that is both

independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (internal citations omitted).

"A prisoner can overcome procedural default by showing cause for the default and resulting prejudice, or by showing he is actually innocent of the offense." *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017). Ineffective assistance of post-conviction counsel on initial review is cause to overcome procedural default of ineffective assistance of trial counsel claims. *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017); *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). But ineffective assistance of post-conviction counsel on appeal is not cause to overcome procedural default. *Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings.").

### III.
### Discussion

#### A.  Double Jeopardy Claim

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal  defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982) (citing *United States v. Dinitz*, 424 U.S. 600, 606 (1976)). When a defendant successfully moves for a mistrial, the State is permitted to retry the defendant provided that the cause of the mistrial was not the prosecutor attempting to "'goal' the defendant into moving for a mistrial." *Id.* at 676. Retrial is only barred  "where the government engages in prosecutorial misconduct which gives rise to a successful motion for mistrial, and such misconduct 'was intended to provoke the  defendant into moving for a mistrial.'" *United States v. Doyle*, 121 F.3d 1078, 1084 (7th Cir. 1997) (quoting *Kennedy*, 456 U.S. at 679). Indiana has codified this  protection. Ind. Code § 35-41-4-3 (2010).

Tompkins' first claim appears to be a claim that he received ineffective assistance of counsel when his trial counsel "vouch[ed] for the prosecutor's misconduct" and "abandoned any adversarial

position." Dkt. 1 at 5. However, his petition notes that he raised this issue on both direct appeal and state post-conviction proceedings. *Id*. at 6.

The respondent analyzes the claim as a double jeopardy claim rather than as a claim of ineffective assistance of counsel. Tompkins' reply brief appears to only argue the claim as an ineffective assistance of counsel claim. Dkt. 22 at 3-4.

Because it is unclear whether Tompkins intended his first claim for relief to be the stand-alone double jeopardy claim he exhausted on direct appeal, or the ineffective assistance of counsel claim he exhausted on post-conviction appeal, the Court will address both.

## 1.  Direct Appeal Double Jeopardy Claim

When reviewing Tompkins' double jeopardy claim, the Indiana Court of Appeals correctly stated the *Kennedy* standard, as codified in Indiana Code § 35-41-4-3 (2010). *Tompkins I*, 2012 WL 4846530 at *4. The court then concluded that the record supported the trial court's conclusion that the prosecutor did not intend to force a mistrial. The prosecutor asked Rutledge who had called her. Trial Transcript, dkt. 7-2 at 175−76. Rutledge went beyond the scope of the question to relay what the caller—Mary Orr—had said. *Id.* Rutledge did this despite having been warned not to testify about what others had said to her outside of court. *Id.* at 178−79.

Prosecutor intent is critical to the success of a motion for discharge, but the nature of the required intent is easily misunderstood. "The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. Yet the blunder will almost always be intentional—the product of a deliberate action, not of a mere slip of the tongue." *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993) (citations omitted). But, "[i]t doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means." *Id*. (citations omitted). Prosecutorial misconduct will not bar retrial unless the prosecutor

was trying to force the mistrial through his misconduct. *Id.*; *see also United States v. Gilmore*, 454 F.3d 725, 730 (7th Cir. 2006).

The evidence in the record is that the prosecutor had instructed Rutledge not to testify about the out-of-court statements of others. His question to Rutledge did not call for hearsay testimony. Instead, Rutledge went beyond the scope of the question. There is no evidence in the record that the trial was going badly for the prosecution. Although the record also reveals that the prosecutor failed to specifically warn his client not to testify about the statements of Mary Orr, and that a previous witness had also violated the motion in limine, it was reasonable for the Indiana Court of Appeals to conclude that the prosecutor did not intend to force a mistrial by asking Rutledge who had called her. Tompkins is not entitled to relief on this ground.

### 2. Trial Counsel's Effectiveness at Arguing for Discharge

Tompkins argues that the Indiana Court of Appeals decision was both based on an unreasonable determination of the facts and was an unreasonable application of Supreme Court precedent. Dkt. 22 at 2. He argues that the court's finding that the prosecutor did not intend to provoke a mistrial was an unreasonable finding of fact based on the evidence.

When reviewing the denial of Tompkins' claim that his counsel provided ineffective assistance of counsel as to the mistrial, the Indiana Court of Appeals again correctly stated the *Kennedy* standard as codified in Indiana Code § 35-41-4-3 and correctly stated the *Strickland* standard for ineffective assistance of counsel. *Tompkins II*, 2019 WL 4924823 at *7-9.

The Indiana Court of Appeals quoted the post-conviction court's findings and then reasoned:

The record reveals that Tompkins's trial counsel requested a motion in limine, which the trial court granted; requested a mistrial following Rutledge's testimony that Orr called her and told her she was getting beat, which the trial court granted; requested a discharge; asked Rutledge if the prosecutor told her not to say anything about what Orr said; stated "I'd like to know, as an officer of the Court what [Prosecutor Solida] told" Rutledge; asked Prosecutor Solida if he told Rutledge that

10

Orr was excluded and that she could not say anything about what Orr said; and asserted to the trial judge "after the first witness did it, you instructed the prosecutor to make sure no one else did it." To the extent trial counsel stated that he had previously dealt with Prosecutor Solida and trusted him, we note his next statement:

> But I think that he had a duty to tell that witness, "Hey, you can't say this", and not think she heard it in the courtroom, but a duty to go and specifically say to her, "Hey, you can't say anything that Mary says because it's been limited [sic] out." She's not a lawyer. And it sounds like they didn't do that.

> We also note that the trial court stated: "I will say this: I do not believe that it was the State's intention to have that witness say that. That question did not call for it. She went beyond what the answer would've called for. You simply said, 'Who called you?'" We cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

*Id*. at *9. The Indiana Court of Appeals did not explicitly apply the *Strickland* standard when addressing this claim. However, the court highlighted additional facts in the record that supported the post-conviction court's finding that trial counsel had not been ineffective. Trial counsel requested a discharge. *See* Trial Transcript, dkt. 7-2 at 180. Trial counsel also argued that the prosecutor failed to comply with the trial court's instructions to prepare his witnesses not to violate the court's ruling on the motion in limine.

Trial counsel's advocacy before the trial judge for mistrial and discharge sometimes focused on the witness's intent to get the hearsay statements before the jury, rather than on the prosecutor's intent to force a mistrial. *Id*. His testimony during the post-conviction hearing indicated that he was not sure what the standard for discharge was, but he believed it required bad faith on the part of the prosecutor. Post-Conviction Transcript, dkt. 7-7 at 16-17. He also acknowledged that his statement that he trusted the prosecutor undercut his argument for discharge. *Id*. at 17-18.

These statements indicate that trial counsel could have done a better job of advocating for discharge. But as noted above, the question before this Court is not whether it "agrees with the

state court decision, or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302.

The Indiana Court of Appeals' decision does not reflect any error beyond "any possibility for fairminded disagreement." *Id.* (quoting *Richter*, 562 U.S. at 103). It was not unreasonable for that court to conclude that the post-conviction court got it right when it held that trial counsel did not perform deficiently and that there was no reasonable likelihood of a different outcome had trial counsel performed better. Tompkins is not entitled to relief on this ground.

### B. Procedural Default of Remaining Direct Appeal Claims

Tompkins raises two other claims from his direct appeal—admission of evidence and prosecutorial misconduct. But the Indiana Court of Appeals held that Tompkins had waived these claims because he did not preserve them at trial. *Tompkins I*, 2012 WL 4846530 at *5-7. Waiver is an adequate and independent state law ground. *See Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) ("Issues available on direct appeal but not raised are waived."); *Richardson v. Lemke*, 745 F. 3d 258, 271 (7th Cir. 2014) (waiver is adequate and independent state law ground). These claims are also procedurally defaulted because Tompkins did not raise them in his petition for transfer to the Indiana Supreme Court. Dkt. 6-8.

### C. Procedural Default of Ineffective Assistance of Counsel Claims

Finally, Tompkins' petition raises two additional ineffective assistance of counsel claims— failure to impeach witnesses and failure to object to prosecutorial misconduct. These claims are also procedurally defaulted. Although Tompkins raised them in his state petition for post-conviction relief, he failed to raise them on appeal to either the Indiana Court of Appeals or the Indiana Supreme Court. *Compare* dkt. 6-11, *with* dkt. 6-13, *and* dkt. 6-17.

Tompkins argues that his procedural default should be excused under the *Martinez* exception. Dkt. 22 at 4-7. But the *Martinez* exception does not apply to post-conviction appeals. *Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings."). Tompkins has defaulted these claims and has not overcome that default.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue on a claim decided on the merits, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted). For claims resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Jurists of reason would not disagree that four of Tompkins' claims are procedurally defaulted and that the Indiana Court of Appeals' denials of his double

13

jeopardy claim and related ineffective assistance of counsel claim were not unreasonable. Therefore, a certificate of appealability is **denied**.

## V.
## Conclusion

Tompkins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 5/26/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Tyler G. Banks
INDIANA ATTORNEY GENERAL
tyler.banks@atg.in.gov

Bryan L. Cook
BRYAN L. COOK ATTORNEY AT LAW
cookindylaw@gmail.com

Terry Wayne Tolliver
BRATTAIN MINNIX GARCIA
Terry@BMGIndy.com